UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20561-CIV-LENARD/GOODMAN

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

v.

DARDEN RESTAURANTS, INC,
et al.,

     Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS (D.E. 7)**

**THIS CAUSE** is before the Court on Defendants Darden Restaurant Inc., GMRI Inc., N and D Restaurants Inc., Darden SW LLC, and Florida SE Inc.'s Motion to Dismiss Plaintiff Equal Employment Opportunity Commission's ("EEOC") Complaint, filed on March 19, 2015. (D.E. 7). On June 5, 2015, the Honorable James Lawrence King recused and this case was reassigned to the undersigned United States District Judge. (D.E. 28). In consideration of the Motion, the Response and Reply thereto, the entire case file, and the applicable law, the Court hereby finds as follows.

**I.    Background**

The EEOC filed this suit under the Age Discrimination in Employment Act of 1967 ("ADEA") to correct unlawful employment practices on the basis of age and to provide appropriate relief to Anthony Scornavacca, Hugo Alfaro, and a class of individuals who were denied employment because of their age. (D.E. 1 at 1). The EEOC

asserts its claims specifically pursuant to § 7(b) of the ADEA, as amended, 29 U.S.C. § 626(b), which incorporates by reference §§ 16(c) and 17 of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.  (D.E. 1 ¶ 1).

The EEOC states that it is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and claims that it is expressly authorized to bring this action by § 7(d) of the ADEA, 29 U.S.C. § 626(b). (D.E. 1 ¶ 3).

The following facts alleged in the EEOC's Complaint, filed on February 12, 2015, are taken as true for purposes of this Motion to Dismiss.  See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  Defendant GMRI is a wholly-owned subsidiary of Defendant Darden.  Defendants N and D Restaurants and Florida SE are wholly owned subsidiaries of GMRI.  Defendant GMRI is the sole member and manager of Defendant Darden SW.  N and D Restaurants, Florida SE, and Darden SW operate or do business under the trade name of Seasons 52.  (D.E. 1 ¶¶ 4–16). The Complaint alleges that "Defendants operate as an integrated enterprise or single employer by virtue of their common management, the interrelations of their operations, the centralized control over their labor relations, and their common ownership."  (D.E. 1 ¶ 18).

Seasons 52 describes itself as a fresh grill and wine bar that features a seasonally inspired menu in a casually sophisticated atmosphere.  (D.E. 1 ¶ 23).  From February 2010, to the date the Complaint was filed, February 12, 2015, Defendants have opened, or will be opening, thirty-five (35) Seasons 52 restaurants nationwide.  (D.E. 1 ¶ 24).

Each restaurant maintains the same casually sophisticated atmosphere. (D.E. 1 ¶ 24). Defendants have a centralized and highly structured hiring process whereby training teams, including a group of managing partners or directors of operations, are deployed prior to new restaurant openings across the country to conduct and train other managers in hiring procedures. (D.E. 1 ¶ 26). The training teams assist to-be-opened and newly-opened Season 52 restaurants by conducting interviews and making hiring decisions. (D.E. 1 ¶ 26). The training teams also train the restaurants' managers to hire in a consistent manner. (D.E. 1 ¶ 26).

The EEOC alleges that Defendants have maintained a standard operating procedure of denying employment to applicants in the protected age group (individuals 40 years of age and older) through their centralized hiring process. The EEOC asserts, for instance, that Defendants' hiring officials have told unsuccessful applicants in the protected age group that "you are too experienced"; "we are looking for people with less experience"; "we are not looking for old white guys"; "we are looking for 'fresh' employees"; and that Seasons 52 wanted a "youthful" image. (D.E. 1 ¶ 27).

The EEOC alleges that a sampling of Defendants' hiring data across restaurant locations nationwide shows that Defendants' hiring of applicants for both front-of-house ("FOH") and/or back-of-house ("BOH") positions in the protected age group is significantly below the expected hiring of applicants in the protected age group based on applications submitted and/or local Census data. (D.E. 1 ¶ 28).

In specific support of their claim, the EEOC asserts facts from two instances where a Seasons 52 restaurant did not hire Anthony Scornavacca and Hugo Alfaro. (D.E.

3

1 ¶¶ 29–42). The EEOC alleges that on October 13, 2010, Scornavacca, then 52 years old, applied for a FOH position at a soon-to-be-opened Seasons 52 in Coral Gables, Florida. (D.E. 1 ¶ 29). Scornavacca was advised that he would not be hired because Season 52 wanted applicants with greater shift availability. (D.E. 1 ¶ 31). Defendants ultimately did not hire Scornavacca and hired a number of young applicants with similar or less shift availability than Scornavacca. (D.E. 1 ¶ 33).

As to Alfaro, the EEOC alleges that on October 11, 2010, Alfaro, then 49 years old, applied for a FOH position at the same Coral Gables Seasons 52. (D.E. 1 ¶ 35). At his initial interview, Alfaro told management that he was going to be leaving his current job in the next few weeks and would be able to attend training, but that he could then work full time and during any shift. (D.E. 1 ¶ 37). Alfaro was not contacted about training, and he went to the restaurant to inquire. (D.E. 1 ¶ 38). When Alvaro returned to Seasons 52, management asked him how old he was. Alfaro was advised thereafter that there was no need for him to check back about the position, and Seasons 52 ultimately did not hire Alvaro. (D.E. 1 ¶¶ 39–40). The EEOC alleges that Defendants hired many less experienced applicants outside the protected age group. (D.E. 1 ¶ 41).

In reliance on the aforementioned allegations, the EEOC states the following claims: (1) "Defendants have subjected Anthony Scornavacca, Hugo Alfaro, and a class of aggrieved applicants for FOH and BOH positions to an ongoing pattern or practice of discriminatory failure to hire such persons because of their age in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a)"; (2) "Defendants have intentionally discriminated against Anthony Scornavacca, who was denied employment because of his age in

4

violation of Section 4 of the ADEA, 29 U.S.C. § 623(a)"; (3) "Defendants have intentionally discriminated against Hugo Alvaro, who was denied employment because of his age in violation of Section 4 of the ADEA, 29 U.S.C. § 623(a)"; and (4) "The unlawful employment practices complained of . . . were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b)."  (D.E. 1 ¶¶ 43–46).  The EEOC seeks injunctive relief and damages.  (D.E. 1 at 7–8).

On March 19, 2015, Defendants filed the instant Motion to Dismiss arguing that the EEOC does not have authority to pursue disparate-<u>impact</u> or pattern-or-practice claims.  (D.E. 7 at 1).  Alternatively, Defendants argue that the EEOC has not pleaded sufficient facts to sustain its claims.  (D.E. 7 at 1).

On April 20, 2015, the EEOC filed its response stating that it is not pursuing a disparate-impact claim; rather, it is pursuing a disparate-<u>treatment</u> claim under § 4(a) of the ADEA.  (D.E. 21 at 1).  The EEOC also argues that similar to Title VII's grant of authority to the EEOC to enforce its provisions for pattern-or-practice claims, the ADEA must be read to permit the same.  (D.E. 21 at 4–8).

**II.   Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to state a cause of action for which relief may be granted.  In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff.  See <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295 (11th Cir. 2007).  When conducting this analysis, the Court may

5

examine only the four corners of the complaint. St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Generally, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**III. Analysis**

Defendants argue that the EEOC cannot pursue a disparate-impact claim under the ADEA because only § 4(a)(2) authorizes such a claim and it does not do so for applicants. The EEOC concedes that it is not attempting to assert a disparate-impact claim, and its Complaint is consistent with this position. Instead, the EEOC asserts a disparate-treatment, pattern-or-practice claim of discrimination.

    A.    Whether the ADEA Authorizes Pattern-or-Practice Claims

Defendants argue that the EEOC cannot pursue a pattern-or-practice claim because the plain statutory language does not authorize pattern-or-practice claims. (D.E. 7 at 6–7). The EEOC argues that similar to Title VII's grant of authority to the EEOC to enforce its provisions for pattern-or-practice claims, the ADEA must be read to permit the same. (D.E. 21 at 4–8); see also Trans World Airlines, Inc. v. Thurston, 469 U.S.

6

111, 121 (1985) ("This interpretation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., applies with equal force in the context of age discrimination, for the substantive provision of the ADEA 'were derived in haec verba from Title VII.'") (quoting Lorillard v. Pons, 434 U.S. 575, 584 (1978))).  The EEOC relies on caselaw permitting pattern-or-practice claims under the ADEA and Defendants acknowledge that the caselaw has developed in such a manner.  Nevertheless, Defendants ask this Court to abandon the jurisprudence and strictly read the statute so as not to permit such theories under the ADEA.  In particular, Defendants claim that the ADEA makes no mention of pattern-or-practice claims, as Title VII does, and thus, this Court cannot permit the claim to proceed.

Section 623(a) of the ADEA provides, in pertinent part, as follows:

It shall be unlawful for an employer—

**(1)** to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

29 U.S.C.A. § 623(a)(1) (2015); see also Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 141 (2000).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'"  Reeves, 530 U.S. at 141 (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

"In order to establish a prima facie case of age discrimination, the plaintiff may show that: (1) he was a member of the protected group of persons between the ages of 40 and 70; (2) he was subject to adverse employment action; (3) a younger person filled the

7

position from which he was discharged; and (4) he was qualified to do the job." Kilpatrick v. Tyson Foods, Inc., 268 F. App'x 860, 863 (11th Cir. 2008) (citing Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000)). "Plaintiffs may establish prima facie cases of age discrimination in three ways: (1) by presenting direct evidence of discriminatory intent, (2) by meeting the so-called 'McDonnell Douglas'[1] test, or (3) **by demonstrating a statistical pattern of discrimination**." Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500 (11th Cir. 1991)[2] (emphasis added) (citing Earley v. Champion Int'l. Corp., 907 F.2d 1077, 1081 (11th Cir.1990)); accord Corbin v. Southland Int'l Trucks, 25 F.3d 1545, 1548 (11th Cir. 1994).

Here, in addition to the specific allegations on behalf of Scornavacca and Alfaro for disparate treatment, the EEOC is also alleging a pattern-or-practice of discriminatory hiring by Defendants. In support, the EEOC cites the standards articulated by the Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977). The Court in Teamsters—in the context of a Title VII discrimination action by

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.").

[2] But see Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000) ("This Court has not squarely addressed whether the McDonnell Douglas framework, developed to assess claims brought under § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U.S.C. § 2000e–2(a)(1), also applies to ADEA actions."); accord Gross v. FBL Fin. Servs., 557 U.S. 167, 175 n.2 (2009).

the Government pursuant to 42 U.S.C. § 2000e-6(a)[3]—stated that the plaintiff bears the initial burden of making out a prima facie case of discrimination by showing "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." Teamsters, 431 U.S. at 336.  The plaintiff must show by a preponderance of the evidence that the discrimination was the company's standard procedure rather than an unusual practice.  Id.  The plaintiff may show the pattern-or-practice by way of statistical data; however, the "usefulness [of the data] depends on all of the surrounding facts and circumstances."  Id. at 339–40.  Once a prima facie showing of a pattern-or-practice of discrimination has been made, a rebuttable presumption that each plaintiff was discriminated against attaches, and the burden then shifts to the defendant to show by clear and convincing evidence that each employment decision was not made in furtherance of the discriminatory policy.  Id. at 359–62.

Thereafter, many federal courts, including the Eleventh Circuit Court of Appeals, have addressed pattern-or-practice claims under the ADEA in a permissive fashion.  See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1227–28 (11th Cir. 2001) (reviewing pattern-or-practice ADEA claim on appeal); Thompson v. Weyerhaeuser Co., 582 F.3d 1125 (10th Cir. 2009) (reaffirming circuit precedent authorizing pattern-or-practice framework in ADEA cases); King v. Gen. Elec. Co., 960 F.2d 617, 624 (7th Cir. 1992) ("ADEA has no parallel provision, but courts nevertheless have adopted the pattern-or-

---

[3] 42 U.S.C. § 2000e-6(a) includes express language that authorizes the Attorney General to bring civil actions against employers whenever it has "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by" Title VII.

practice terminology and the shifting burden of persuasion to ADEA actions."); EEOC v. W. Elec. Co., 713 F.2d 1011 (4th Cir. 1983) ("The ultimate factual issues in the EEOC's group discrimination action are whether there was a 'pattern or practice' of disparate treatment against the group and, if so, whether the differences were based on age considerations."); Stone v. First Union Corp., 203 F.R.D. 532, 547 (S.D. Fla. 2001); Martin v. Ryder Distrib. Res., Inc., 811 F. Supp. 658, 661 (S.D. Fla. 1992); cf. Giles v. BellSouth Telecomms., Inc., 542 F. App'x 756, 759 (11th Cir. 2013) (applying same proof scheme for failure to promote under both Title VII and the ADEA).

Defendants argue that even if pattern-or-practice claims were cognizable in the past based on caselaw, the Supreme Court's decision in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), changed the legal landscape and the Eleventh Circuit has yet to address a pattern-or-practice claim post-Gross.

In Gross, the Court reviewed a trial court's jury instruction in an ADEA case that instructed the jury to enter a verdict in the plaintiff's favor if he proved by a preponderance of the evidence that his age was the motivating factor in his demotion, but to return a verdict in the defendant's favor if defendant proved that it would have demoted the plaintiff regardless of his age. Id. at 169–71. The Supreme Court held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and that "the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when plaintiff has produced some evidence that age was one motivating factor in that decision." 557 U.S. at

180. The Court's holding was premised on the fact that Title VII was amended to expressly adopt a "motivating factor" standard for discrimination rather than a "but for" inquiry; whereas the ADEA was not amended in the same fashion.

The EEOC cites a post-Gross opinion from the Tenth Circuit Court of Appeals that disposes of Defendants' argument. In Thompson v. Weyerhaeuser Co., 582 F.3d 1125 (10th Cir. 2009), the Tenth Circuit directly addressed whether Gross affected the appropriateness of pattern-or-practice claims under the ADEA, as similarly raised by Defendants in this case. The court determined that Gross did not change the application of the pattern-or-practice standard to ADEA claims. Specifically, the Court held as follows:

> The Court contrasted that burden to the lesser one imposed on plaintiffs in Title VII cases. See [Gross, 129 S. Ct.] at 2349 (explaining that "Congress has since amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was a motivating factor") (internal citation omitted). It also noted that, in Title VII "mixed motive" cases, once a "plaintiff ... proves that [the plaintiff's membership in a protected class] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken [that factor] into account." Id. (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)) (alteration in original). The Gross Court explained that it "ha[d] never held that this burden-shifting framework applies to ADEA claims[,][a]nd, we decline to do so now." Id.
>
> We are not persuaded by Weyerhaeuser's argument. Gross does not involve the pattern-or-practice procedure at issue here. Moreover, the Court relied on the fact that Congress had amended Title VII to expressly adopt a "motivating factor" standard for discrimination rather than a "but for" inquiry. Here, Weyerhaeuser cannot point to an analogous difference in the language of Title VII and the ADEA that establishes that the pattern-or-practice framework is proper under one anti-discrimination statute but not the other.

11

> As we have noted, Title VII does contain a brief reference to pattern-or-practice claims filed by the Attorney General, see 42 U.S.C. § 2000e-6(a), while the ADEA contains no similar provision. However, the pattern-or-practice burden shifting framework at issue here is mentioned in neither statute. Instead, the framework has been established by the courts. See Teamsters, 431 U.S. at 359 n.45 . . . ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof."). Thus, in our view, the Supreme Court's decision in Gross does not overrule circuit precedent that authorizes the application of the pattern-or-practice framework in ADEA cases.

Thompson, 582 F.3d at 1131. This Court concurs with the Tenth Circuit's conclusion that Gross did not overrule prior precedent permitting pattern-or-practice claims under the ADEA. Though the Court in Gross applied statutory-interpretation analysis that is consistent with Defendants' current position, the Court only analyzed a specific burden-of-persuasion issue pertinent to mixed-motive cases—its holding did not reject jurisprudence applying the pattern-or-practice standard to ADEA claims.

Defendants' argument is not baseless. Indeed, Title VII specifically references pattern-or-practice actions by the Government and the ADEA does not. However, absent a Supreme Court holding that expressly disagrees with the jurisprudence of this Circuit and other Circuits that have permitted pattern-or-practice claims in ADEA cases, this Court is bound by the controlling authority and persuaded by others permitting such actions. Accordingly, the Court concludes that the EEOC is authorized to bring a pattern-or-practice claim against Defendants under the ADEA.

> B.   Whether the EEOC Fails to Allege Sufficient Facts to State a Claim Under the ADEA.

In the alternative to its first argument, Defendants also argue that the EEOC has not asserted sufficient facts to support its discrimination claim under the ADEA. To the extent that Defendants argue against a disparate-impact claim, this issue will not be addressed because the EEOC concedes that it is not pursuing such a claim. However, Defendants also argue that there are insufficient factual allegations to support a disparate treatment, pattern-or-practice claim. (D.E. 7 at 15).

The EEOC's Complaint asserts facts from two instances where a Seasons 52 restaurant did not hire Anthony Scornavacca and Hugo Alfaro. (D.E. 1 ¶¶ 29–42). The EEOC alleges that on October 13, 2010, Scornavacca, then 52 years old, applied for a FOH position at a soon-to-be-opened Seasons 52 in Coral Gables, Florida. (D.E. 1 ¶ 29). Scornavacca was advised that he would not be hired because Season 52 wanted applicants with greater shift availability. (D.E. 1 ¶ 31). Defendants ultimately did not hire Scornavacca and hired a number of young server applicants with similar or less shift availability than Scornavacca. (D.E. 1 ¶ 33).

As to Alfaro, the EEOC alleges that on October 11, 2010, Alfaro, then 49 years old, applied for a FOH position at the same Coral Gables Seasons 52. (D.E. 1 ¶ 35). At his initial interview, Alfaro told management that he was going to be leaving his current job in the next few weeks and would be able to attend training, but that he could then work full time and during any shift. (D.E. 1 ¶ 37). Alfaro was not contacted about training and he went to the restaurant to inquire. (D.E. 1 ¶ 38). When Alvaro returned,

13

Seasons 52 asked him how old he was.  Alfaro was advised thereafter that there was no need for him to check back about the position and Seasons 52 did not hire Alvaro.  (D.E. 1 ¶¶ 39–40).  The EEOC alleges that Defendants hired many less experienced applicants outside the protected age group.  (D.E. 1 ¶ 41).

The EEOC asserts that Defendants' hiring officials have told unsuccessful applicants in the protected age group that "you are too experienced"; "we are looking for people with less experience"; "we are not looking for old white guys"; "we are looking for 'fresh' employees"; and that Seasons 52 wanted a "youthful" image.  (D.E. 1 ¶ 27).

Furthermore, the EEOC alleges that a sampling of Defendants' hiring data across restaurant locations nationwide shows that Defendants' hiring of applicants for both FOH and/or BOH positions in the protected age group is significantly below the expected hiring of applicants in the protected age group based on applications submitted and/or local Census data.  (D.E. 1 ¶ 28).

In consideration of the allegations above, the Court concludes that such are sufficient to support a plausible pattern-or-practice claim of age discrimination in Defendants' hiring practices.

Defendants also argue that the EEOC does not sufficiently assert claims against each Defendant.  Specifically, Defendants argue that related corporations are not considered a single employer without consideration of the following factors:  "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; (4) and common ownership or financial control."  Guaqueta v. Universal Beverages, LLC, No. 09-21576, 2010 WL 2757193, at *5 (S.D. Fla. July 13, 2010)

14

(citing McKenzie v. Davenport–Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987)).

Here, the EEOC alleges that (1) Defendant GMRI is a wholly-owned subsidiary of Defendant Darden; (2) Defendants N and D Restaurants and Florida SE are wholly owned subsidiaries of GMRI; (3) Defendant GMRI is the sole member and manager of Defendant Darden SW; and (4) N and D Restaurants, Florida SE, and Darden SW operate or do business under the trade name Seasons 52. (D.E. 1 ¶¶ 4–16). The EEOC also alleges that (1) "Defendants operate as an integrated enterprise or single employer by virtue of their common management, the interrelations of their operations, the centralized control over their labor relations, and their common ownership" (D.E. 1 ¶ 18); and (2) "Defendants utilize nearly identical hiring processes and practices for all pre-opening hiring and for hiring at all newly-opened restaurants" (D.E. 1 ¶25).

Based on a review of the Complaint allegations set forth above under Rule 8(a), the Court concludes that the EEOC sufficiently alleges that Defendants are a single employer. Defendants' argument is akin to a challenge more appropriately raised at the summary-judgment stage.

**IV.   Conclusion**

Therefore, after careful consideration of the Motion, Response, Reply, and applicable caselaw, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss (D.E. 7), filed on March 19, 2015, is **DENIED**; and

    **2.**    Defendants shall file their answers to the Complaint within ten (10) days of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida this 9th day of November, 2015.

 

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**