IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

          Plaintiff,

v.

GMRI, INC.,

          Defendant.

Case No. 15-CV-20561

Honorable Judge Joan A. Lenard

**DEFENDANT'S MEMORANDUM OF LAW REGARDING
ISSUES RELATIVE TO THE EEOC'S SPOLIATION SANCTIONS MOTION**

Defendant submits this memorandum per the Court's September 1, 2017 Order. (DE 261.)

**I.     If the Court determines that Defendant was negligent, reckless or even grossly negligent, but did not act in bad faith, in connection with the destruction of the records at issue, then what consequences, if any, arise?**

If the Court determines that Defendant did not act in bad faith, it should deny the EEOC's motion for sanctions. More than 20 years of Eleventh Circuit precedent holds that a movant must prove that the non-moving party acted in bad faith before the court may enter a spoliation sanction.

As the Eleventh Circuit explained in *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997), "[i]n this circuit, an adverse inference is drawn from a party's failure to preserve evidence *only when the absence of that evidence is predicated on bad faith*." *Id.* at 931 (emphasis added) (*citing Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)). The Eleventh Circuit has confirmed this rule time and time again. *See, e.g., Hill v. Cundiff*, 797 F.3d 948, 968 (11th Cir. 2015) (same); *Horton v. Maersk Line, Ltd.*, 603 F. App'x 791, 797 (11th Cir. 2015) (same); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (same); *Cox v. Target Corp.*, 351 F. App'x 381, 383 (11th Cir. 2009) (affirming denial of spoliation motion; "A jury instruction on spoliation of evidence is required 'only when the absence of that evidence is predicated on bad faith'").

This Court also has applied this authority many times. As this Court explained in *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510 (S.D. Fla. 2015), "[t]he Eleventh Circuit has stated that '[t]he key to unlocking a court's inherent power [to impose sanctions for spoliation] is a finding of bad faith.'" *Id.* at 513 (granting spoliation motion after finding bad faith). Without such a finding of bad faith, the court may not impose spoliation sanctions. *See, e.g., Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc.*, No. 1:14-CV-20560-KMM, 2015 WL 7253251, at *2 (S.D. Fla. Nov. 17, 2015) (denying spoliation sanctions; "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on bad faith'"); *Wandner v. Am. Airlines*, 79 F. Supp. 3d 1285, 1297 (S.D. Fla. 2015) (denying spoliation sanctions; "[a] party's failure

to preserve evidence" rises to the level of sanctionable spoliation in this Circuit only where the absence of that evidence is predicated on bad faith, such as where a party purposely tamper[s] with the evidence"); *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, No. 12-22787-CIV, 2013 WL 1100063 (S.D. Fla. Mar. 15, 2013) (denying spoliation sanctions; "[b]ecause Scottsdale has not established bad faith, an Eleventh Circuit requirement for imposing spoliation sanctions in Florida"); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011) (denying spoliation sanctions; "[i]n this Circuit, a court cannot give an adverse inference jury instruction… as a sanction for spoliation… unless there is evidence of bad faith").

Under the Court's hypothetical, which assumes no bad faith, the sanctions requested by the EEOC are not available. Seven of the nine sanctions requested by the EEOC are adverse inferences. (DE 246 at 20-21, 24.) As to paper applications and interview booklets, the EEOC requests an inference that applications at four locations "would have shown more significant under-hiring of older applicants than Census proxies and electronic data"; that applications at five locations "would have provided anecdotal age discrimination testimony"; and that interview booklets "could have contemporaneously recorded the interviewer's observations, age bias and other indicia of what took place at the interviews, which could be used to rebut the assertion that older applicants performed poorly at interviews as compared with younger applicants." (*Id.* at 20-21) As to emails, the EEOC asks "to argue what the lost emails likely would have contained"; seeks an inference that "email would reflect additional emails expressing a preference for younger applicants"; and requests an order to "not allow [Seasons 52] to introduce evidence about the content of lost emails" (*i.e.*, to prevent it from rebutting the EEOC's arguments about what emails might have shown). *Id.*

Each of these requests seeks a sanction in the form of a presumption as to what unavailable documents would have shown. These types of sanctions are adverse inferences and, therefore, require a predicate showing of bad faith. In prior decisions, the Court has categorized the "different

2

types of adverse inferences," which include the types of sanctions that the EEOC has requested in this case. *Commercial Long Trading*, 2013 WL 1100063, at *3; *Point Blank Sols.*, 2011 WL 1456029, at *9. The "harshest type" is an instruction to the jury "that certain facts are deemed admitted and must be accepted as true." *Commercial Long Trading*, 2013 WL 1100063, at *3. In the middle is "the imposition of a mandatory, albeit rebuttable, presumption." *Id.* Finally, the "least-harsh type" is one that "permits a jury to presume that the lost evidence is relevant and favorable to the innocent party," but where "the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference." *Id.* None of these adverse inferences is permitted without a finding of bad faith. *Id.*; *see also Point Blank Sols.*, 2011 WL 1456029, at *1 (refusing to impose an adverse inference "unless there is evidence of bad faith").

The remaining two types of sanctions that the EEOC requests, which pertain to Seasons 52's expert, Dr. Ali Saad, are similarly unavailable without a finding of bad faith. The EEOC requests "the exclusion of Dr. Saad's Census Data analysis" at three locations and "the exclusion of Dr. Saad's employment path theory and NLSY adjustments." (DE 246 at 20-21.) These two requested sanctions have no connection to the EEOC's spoliation arguments, for the reasons previously explained. (DE 259 at 11, 15-16.)[1] In any event, the exclusion of expert testimony is a sanction that is unavailable without a finding of bad faith. *Point Blank Sols.*, 2011 WL 1456029, at *9.

II.     **Is the analysis of the summary judgment motion impacted in any way? If so, how?**

The EEOC's motion for spoliation sanctions is not relevant to the pending cross-motions for summary judgment on Season 52's affirmative defenses (DE 241, DE 227) or Season 52's

---

[1] For example, the EEOC has contended that Dr. Saad's analysis based on data from the National Longitudinal Study of Youth ("NLSY") is "only possible due to the [alleged] spoliation" of interview booklets. (DE 246 at 10.) Dr. Saad's analysis and his use of NLSY data, both of which recently have been accepted over the EEOC's objection, are not related in any way to the interview booklets. *See EEOC v. Texas Roadhouse, Inc.*, 215 F. Supp. 3d 140, 164 (D. Mass. 2016) (denying EEOC motion to exclude report and testimony by Dr. Saad related to his use of NLSY data).

3

pending motion for summary judgment on the EEOC's pattern or practice claim (DE 241 at 6-22).

The EEOC does not suggest that its motion for spoliation sanctions has any relationship to the pending cross-motions for summary judgment on Season 52's affirmative defenses. In fact, Seasons 52's summary judgment motion may moot many of the EEOC's spoliation arguments. For example, the EEOC has requested spoliation sanctions related to restaurants located in Tampa, Costa Mesa, King of Prussia, Jacksonville, and Kansas City. (DE 246 at 20-21.) Seasons 52 has moved for summary judgment on multiple indepedent grounds that would dispose of the EEOC's claims relating to these restaurants. (DE 241 at 22-26; DE 241-1.)

The EEOC's argument that its motion for spoliation sanctions has any impact on Season 52's motion for summary judgment on the EEOC's pattern or practice claim is similarly without merit. In its response to Seasons 52's motion for summary judgment, the EEOC claimed only twice that alleged spoliation affected its presentation, and neither claim is convincing. First, the EEOC posited in a footnote - in a general unsubstantiated statement - that its "anecdotal, statistical, and documentary evidence would be even stronger but for Seasons' spoliation of evidence." (DE 253 at 6 n.3.) The EEOC provided no basis for its speculation and, in any event, for purposes of summary judgment, it is irrelevant whether more paper applications for the restaurants in Tampa, Costa Mesa, and King of Prussia would have led to more strongly negative statistical outcomes for those locations, as the EEOC asserts (DE 246 at 16), because the EEOC aggregated hiring decisions across all locations. (*See* DE 253 at 10-14.) The EEOC did not advance any argument based on restaurant-level results,[2] and Seasons 52 already acknowledged in its own motion that a statistically significant hiring shortfall appeared at all three locations. (DE 241 at 14.)

Second, the EEOC's position on anecdotal evidence does not fare any better. The EEOC misleadingly suggested that "Defendant's spoliation of applications impeded EEOC from contacting

---

[2] The EEOC's expert did not even opine on a restaurant by restaurant basis. (DE 246-17.)

4

applicants to the two stores for which there is no 40+ applicant testimony." (DE 253 at 17 n.14.) The EEOC's speculation is contradicted by the facts. The EEOC contacted "thousands" of 40+ applicants. (DE 242 at 2, ¶ 56, admitted at DE 247.) By its own estimation, of the 4,496 applicants age 40 and over identified during discovery, the EEOC obtained testimony from just 3%. (DE 253 at 16.) Even if the EEOC gathered some additional claimants from the few locations where it claims it should have had more applications, the percentage would not change by any significant degree, rendering it still insufficient as a matter of law. *See* DE 241 at 20 (citing *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 473 (S.D.N.Y. 2011) (evidence from 78 members of 603 person class (12.9%) was quantitatively insufficient; "even if Bloomberg discriminated against the [78] claimants presented here, that level of discrimination does not indicate Bloomberg's 'standard operating procedure' … or 'widespread acts of intentional discrimination against individuals[.]'").

Similarly, any argument that the EEOC would have found qualitatively better anecdotal evidence had it identified additional applicants is based on pure speculation and, therefore, it should not have any effect on the consideration of summary judgment. Over the course of discovery, Seasons 52 produced hundreds of thousands of documents from more than one hundred custodians working at or on behalf of restaurants across the country. The EEOC sought additional claimants through means such as its website, where the EEOC solicited "[i]ndividuals who believe they may have been denied a position at Seasons 52 because of their age." Press Release, Equal Employment Opportunity Commission, Seasons 52 Refused to Hire Older Workers Nationwide, EEOC Charges in Lawsuit (Feb. 12, 2015), https://www.eeoc.gov/eeoc/newsroom/release/2-12-15a.cfm. Nothing prevented the EEOC from taking other steps to target potential claimants. Importantly, the EEOC does not argue, and there is no reason to believe, that additional application materials from five stores would have provided additional support for the EEOC's claims.

Any complaint that the EEOC lacked applicant flow data for analysis or the opportunity to

identify more claimants arose from its own strategic decision to limit the scope of its requests for information.  The EEOC requested applicant information only for those who applied for hourly positions before the one-year anniversary of each restaurant opening to the public.  Its expert did not know why the applicant data was limited to the one-year mark, nor could he offer any factual or reasoned basis for the limitation.  (Neumark Dep. 55-62.)  Because Seasons 52 has retained all electronic applications and hiring data since Fall 2011, the EEOC could have obtained many years' worth of electronic applications for the five locations it now complains about if it had only raised its spoliation arguments earlier or requested the additional information during discovery.  After choosing to forego the opportunity to obtain such data, the EEOC cannot claim prejudice.

In sum, the issues raised in the EEOC's motion do not impact summary judgment.

**III.     May the EEOC introduce at trial evidence of the destruction of the materials, and if so, under what theory of relevance?**

Evidence of any alleged failure to retain application materials is not relevant to the EEOC's claim.  During Stage One, the EEOC must demonstrate that Seasons 52 engaged in a pattern or practice of intentional age discrimination.  (DE 126 at 7.)  Whether a few managers failed to retain a limited number of paper applications and interview booklets at a few restaurants does not make it more likely that Seasons 52 had a standard operating procedure of age discrimination on a company-wide basis.  Fed. R. Evid. 401.  Even if such evidence were relevant, its introduction would unfairly prejudice Seasons 52, confuse the issues, mislead the jury, and waste time.  Fed. R. Evid. 403.

Any attempt by the EEOC to introduce evidence regarding Season 52's alleged failure to retain documents contradicts the EEOC's own assertion that evidence of its pre-suit investigation should be excluded.  The EEOC's spoliation accusation is based on its theory that it provided Seasons 52 notice of its pre-suit investigation.  Thus, any presentation of the accusation necessarily requires exploration of whether the EEOC notified Seasons 52 of its investigation, whether the EEOC advised Seasons 52 that it should retain documents, and whether the materials at issue fell

6

within the scope of that investigation or notice.  However, the EEOC recently urged the Court to exclude facts about its pre-suit investigation, arguing that "[e]vidence about the scope or substance of the EEOC investigation would needlessly extend the trial and shift the jury's focus away from deciding the ultimate issue in the case[.]"  (DE 267 at 3.)  In other words, the EEOC wants it both ways, as it concedes that information regarding Season 52's alleged failure to retain records is not relevant to or would confuse the issues, mislead the jury, and waste the time of the Court and jury.

Finally, in the alternative, the Court should postpone consideration of whether evidence regarding the alleged destruction of documents is admissible.  In prior decisions, the Court has declined to rule on the admissibility of such evidence in advance of trial.  For example, in *Wandner*, 79 F. Supp. 3d at 1305, the Court denied the moving party's motion for spoliation sanctions.  While "not preclud[ing] him from presenting the facts (and related, permissible arguments) surrounding his preservation requests and the [defendant's] failure to achieve that result to the jury," the Court nonetheless noted that introduction of such evidence would be subject to the oversight of the district judge presiding over the trial.  *Id.*  The Court reached the same result in *Point Blank Sols.*, 2011 WL 1456029 at *31, where it observed that "Point Blank could conceivably seek to introduce the evidence surrounding [the] alleged loss or destruction of evidence at trial," but also noted that "[i]f Point Blank pursues the issue at trial despite the absence of the adverse inference jury instruction, then the presiding district judge will determine whether this type of evidence is admissible at trial."  The Court here should not find that such evidence is relevant or admissible.

## **CONCLUSION**

Defendant respectfully requests that the Court deny the EEOC's Motion.

**DATED: September 19, 2017**         Respectfully submitted,


By: */s/ Gerald L. Maatman, Jr.*


Gerald L. Maatman, Jr. (*gmaatman@seyfarth.com*)
Jennifer A. Riley (*jriley@seyfarth.com*)
Andrew Scroggins (*ascroggins@seyfarth.com*)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Alex Drummond (*adrummond@seyfarth.com*)
SEYFARTH SHAW LLP
1075 Peachtree Street, NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 885-1500
Facsimile: (404) 885-7056

Michael C. Marsh (*michael.marsh@akerman.com*)
AKERMAN LLP
One Southeast Third Avenue, 25th Floor
Miami, FL 33131
Telephone: (305) 982-5507
Facsimile: (305) 374-5095

Arlene K. Kline (*arlene.kline@akerman.com*)
AKERMAN LLP
777 South Flagler Drive
Suite 1100 West Tower
West Palm Beach, FL 33401-6183
Telephone: (561) 653-5000
Facsimile: (561) 659-6313

*Attorneys For Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on this 19th day of September 2017, he caused the foregoing to be filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record, including the following:

**Beatriz Biscardi Andre**
**Kristen M. Foslid**
**Ana Consuelo Martinez**
**Kimberly Ann McCoy**
**Daniel Seltzer**
**Robert Elliot Weisberg**
U.S. Equal Employment Opportunity Commission
The Miami Tower
100 SE 2nd Street, Suite 1500
Miami, FL 33131
305-808-1779
ana.martinez@eeoc.gov
daniel.seltzer@eeoc.gov
kimberly.Cruz@eeoc.gov
kristen.foslid@eeoc.gov
beatriz.andre@eeoc.gov

/s/ Andrew Scroggins