IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 15-cv-20561-JAL/JG |
| GMRI INC., | ) ) | |
| Defendant. | ) ) | |

## CONSENT DECREE

This Consent Decree ("Decree") is made and entered into by and between the United States Equal Employment Opportunity Commission ("Commission" or the "EEOC"), and GMRI, Inc. ("Seasons 52" or "Defendant") (hereinafter EEOC and Seasons 52 collectively referred to as "the Parties").

### INTRODUCTION

1.      The Commission filed this action on February 12, 2015, alleging that Seasons 52 engaged in a pattern or practice of age discrimination by refusing to hire applicants age 40 and over for front-of-the-house and back-of-the-house positions at 35 restaurants nationwide, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"). The Commission also alleged that Seasons 52 did not hire Charging Parties Anthony Scornavacca or Hugo Alfaro based on their age, in violation of the ADEA.

2.      The agreement to enter into this Decree shall not be construed as an admission of liability by Seasons 52 as to any allegations by EEOC. Seasons 52 denies the allegations in the Complaint and denies that it violated the ADEA.

3.      In the interest of resolving this matter, and to avoid further cost of litigation, and as a result of having engaged in comprehensive settlement negotiations, the Parties have agreed that this action should be finally resolved by entry of this Decree.  This Decree is final and binding on the Parties, and their respective successors and assigns.

4.      No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing and signed by an authorized representative of each of the Parties.  By mutual agreement of the Parties, this Decree may be amended or modified in the interests of justice and fairness in order to effectuate the provisions of this Decree.

5.      This Decree fully and finally resolves the claims asserted by the Commission in the Complaint filed in this action styled *EEOC v. GMRI, Inc.*, Case No. 15-cv-20561-JLK (S.D. Fla.), and the underlying EEOC charges of discrimination which are: EEOC Charge No. 510-2011-01267 (*Anthony Scornavacca v. Seasons 52 Fresh Grill*), and EEOC Charge No. 510-2011-01266 (*Hugo A. Alfaro v. Seasons 52 Fresh Grill*).

6.      This Decree constitutes the complete understanding between the Parties with respect to the matters herein.

7.      If one or more provisions of this Decree are rendered unlawful or unenforceable, the Parties shall attempt to agree upon what amendments to this Decree, if any, are appropriate to effectuate the purposes of this Decree. In any event, the unaffected provisions will remain enforceable.

8.      This Decree does not resolve any charges of discrimination that may be pending with the Commission against Seasons 52 other than the Charges referred to in paragraph 5. This Decree in no way affects the EEOC's right to bring, process, investigate, or litigate other charges

that may be in existence or that may later be filed against Seasons 52 in accordance with standard EEOC procedures.

9.     Nothing in this Decree shall be construed to limit or reduce Seasons 52's obligations to comply with the statutes enforced by EEOC: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., ("Title VII"), Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, as amended, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-633a, the Equal Pay Act ("EPA"), 29 U.S.C. §206(d), and the Genetic Information Nondiscrimination Act of 2008 ("GINA), 42 U.S.C. § 2000f.

## DEFINITIONS

10.     The term "Commission" or "EEOC" is the U.S. Equal Employment Opportunity Commission, an agency of the United States Government.

11.     The term "Allegedly Aggrieved Person" or "AAP" refers to individuals who were age 40 or above when they applied through submission in person with a paper application or when they applied electronically and participated in a face-to-face interview, and were denied a FOH or BOH Position with Seasons 52 at one of the 35 restaurant locations at issue in this lawsuit ("Litigated Restaurant Locations").

12.     The term "Eligible Aggrieved Person" or "EAP" are Allegedly Aggrieved Persons determined by EEOC to be entitled to receive a monetary award.

13.     The term "Claims Administrator" shall refer to a claims administrator of EEOC's choosing who, along with Seasons 52, shall cause to be established a Qualified Settlement Fund under §468(b) of the Internal Revenue Code hereunder for the purpose of providing individual monetary awards to Eligible Aggrieved Persons.

14.     The term "day" or "days" means calendar days.

15.     The term "Effective Date" shall mean the date on which the Court gives final approval to the Decree by entering it on the Court docket after motion and hearing, if required.

16.     The term "FOH Position" refers to all front of the house, non-management positions compensated on an hourly basis at Seasons 52 restaurants, including: Host/ess, Server, Bartender, and Foodrunner.

17.     The term "BOH Position" refers to all back of the house, non-management positions compensated on an hourly basis at Seasons 52 restaurants, including: Steward, Prep Cook, and Line Cook.

18.     The term "Hire" or "Hiring" refers to the filling of a job opening with an individual who is new to Seasons 52 or who is a former employee of Seasons 52.

19.     The term "Covered Restaurant Locations" refers to the Seasons 52 restaurant locations opened between February 1, 2010 the expiration of this Consent Decree.

20.     The term "Litigated Restaurant Locations" refers to the 35 Seasons 52 restaurant locations opened between February 1, 2010 and February 12, 2015.

21.     The term "Litigation" refers to the action filed by the EEOC on February 12, 2015, alleging that Seasons 52 did not hire applicants age 40 and over at Litigated Restaurant Locations because of their age in violation of the ADEA.

22.     The term "NRO" shall mean New Restaurant Opening.

23.     The terms "person in the protected age group," "PAG," or "person in the PAG" refer to an individual age 40 or above.

24.     The term "Hiring Complaint" means a formal complaint or objection to age discrimination in hiring that relates to the hiring process at any Litigated Restaurant Location or

at any Covered Restaurant Locations. A formal complaint is a complaint that is submitted to a Managing Partner or higher level of management, Employee Relations, the Seasons 52 Guest Relations E-mail, the Ethics hotline, or one that Seasons 52 became aware of in those departments.

## FINDINGS

25.     Having carefully examined the terms and provisions of this Decree, and based on the pleadings, record, and stipulations of the Parties, the Court finds the following:

      a.     This Court has jurisdiction over the subject matter of this action and the Parties;

      b.     The Court will retain jurisdiction for the duration of this Decree;

      c.     No party shall contest the jurisdiction of this Court to enforce this Decree and its terms or the right of the Commission to bring an enforcement suit upon alleged breach of any term(s) of this Decree;

      d.     The terms of this Decree are adequate, fair, reasonable, equitable, and just. The rights of Charging Parties Scornavacca and Alfaro, Allegedly Aggrieved Persons, and the public interest are adequately protected by this Decree; and

      e.     The terms of this Decree are and shall be binding upon the present and future representatives, agents, directors, officers, successors, and assigns of Seasons 52.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

**DURATION OF DECREE**

26.     This Decree shall be in effect for a period of three (3) years from the Effective Date.

27.     This Decree will not expire while any enforcement action concerning this Decree is pending.

## GENERAL INJUNCTIVE PROVISIONS

28.     Seasons 52, its officers, agents, servants, employees, successors in interest, and all persons acting in concert with them or on their behalf shall not reject applicants for FOH or BOH Positions at all Seasons 52 restaurant locations on the basis of age in violation of the ADEA.

29.     Seasons 52, its officers, agents, servants, employees, successors in interest, and all persons acting in concert with them or on their behalf, shall not print or publish, or cause to be printed or published, any notice or advertisement relating to employment that indicates any preference, limitation, specification, or discrimination based on age in violation of the ADEA. Such prohibited conduct includes, but is not limited to, notices and advertisements regarding career opportunities posted on any website by or for Seasons 52 that explicitly or implicitly express a preference, limitation, specification, or discrimination because of age.

30.     Seasons 52, its officers, agents, servants, employees, successors in interest, and all persons acting in concert with them or on their behalf, shall not retaliate against any applicants or employees at all Seasons 52 restaurant locations who: oppose any hiring practice made unlawful by the ADEA; file a charge of discrimination on the basis of age; assist in any investigation, proceeding, or hearing in connection with any charge of discrimination or complaint of age discrimination on the basis of age; or sought or received relief in this action.

## INJUNCTIVE PROVISIONS:

## DECREE COMPLIANCE MONITOR

31.     The parties agree that Fred W. Alvarez of Jones Day shall be engaged by Seasons 52 to serve as the independent Decree Compliance Monitor ("DCM"). The DCM shall have responsibility for monitoring Seasons 52's compliance with this Decree for its duration. If at any point Mr. Alvarez becomes unavailable to serve in the capacity of DCM, the Parties shall confer and reach agreement as to another neutral third party to be engaged by Seasons 52 in the role of DCM. If no agreement can be reached after a reasonable period of conferral, the Parties agree to each submit three proposed alternative names to the Court for its selection of a replacement DCM.

32.     Seasons 52 shall compensate the DCM at a reasonable rate for his/her services and those of any agents, employees, or associates whose assistance she/he reasonably requires to fulfill the DCM's obligations under the Decree. Seasons 52 shall reimburse the DCM's reasonable out-of-pocket expenses.

33.     Seasons 52 will work cooperatively with the DCM to facilitate performance of his/her duties under this Decree, and the DCM shall work cooperatively with Seasons 52. The DCM will perform his/her work objectively and independently and not be subject to any undue influence by any person, corporation or governmental agency.

34.     EEOC may communicate directly with the DCM at any time. If the DCM is not satisfied with Seasons 52's efforts to comply with the Decree, then upon request, the DCM shall supply to the EEOC any data, documentary information, and all information provided by Seasons 52 that EEOC deems necessary to evaluate any report by the DCM that reflects the DCM's dissatisfaction with Seasons 52's efforts to comply with the Decree.

35.     Among other responsibilities, the DCM shall ensure compliance with the terms of this Decree by reviewing reports and information from Seasons 52, requesting and obtaining additional information when needed, and making recommendations as set forth in detail herein.

## INTERNAL COMPLIANCE MONITOR

36.     Within thirty (30) days of the Effective Date, Seasons 52 shall designate an internal employee as Internal Compliance Monitor ("ICM"). The Internal Compliance Monitor will be responsible, in part, for overseeing Seasons 52's administrative responsibilities pursuant to this Decree and will report directly to the General Counsel of the Company with respect to Seasons 52's compliance with this Decree for the duration of the decree.

## COMPLAINTS OF AGE DISCRIMINATION IN HIRING

37.     The Internal Compliance Monitor shall receive all Hiring Complaints. The Internal Compliance Monitor shall be responsible for investigating Hiring Complaints. The Internal Compliance Monitor shall have the authority to designate a Human Resources Professional or Director of Operations to conduct the initial investigation. In no event will the investigation be conducted by a manager at the individual restaurant where the complaint was made. With respect to each Hiring Complaint, the Internal Compliance Monitor shall prepare a Hiring Complaint Report, which shall include the following:

    a.   Date that Seasons 52 learned of the Hiring Complaint;

    b.   The allegations made in the Hiring Complaint;

    c.   For the person(s) making the Hiring Complaint: full name; job title or position applied for; Seasons 52 restaurant location where the application was made; all available contact information, such as home address, work address, telephone number, e-mail address, and date of birth (if known);

    d.  For the person(s) who are alleged to have engaged in age discrimination: full name; job title or position; Seasons 52 restaurant location where the person(s) is employed; work address; last known home address; last known telephone number; e-mail address; and date of birth (if known);

    e.  Facts obtained relating to the Hiring Complaint; and

    f.  A summary of the investigation and any action taken by Seasons 52 in response to the Hiring Complaint.

38.    Hiring Complaint Reports will be provided to the DCM as provided below. The DCM has authority to request non-privileged information relating to the investigation by the Internal Compliance Monitor (or designee) including, but not limited to, any investigatory reports, memoranda, notes, witness statements, affidavits, or other investigation related materials. The DCM has authority to contact the person who submitted the Hiring Complaint. The DCM may make recommendations to the Internal Compliance Monitor as to additional investigative steps or corrective action that should be taken. If, after making recommendations to the Internal Compliance Monitor, the DCM has any concerns with the investigative or corrective steps taken by Seasons 52, he may contact the person(s) who are alleged to have engaged in age discrimination and any witnesses at his discretion. The DCM shall provide a copy of the Hiring Complaint Report and his recommendations to EEOC.

39.    If Seasons 52 believes that any of the DCM's recommendations cannot be implemented, then Seasons 52 shall provide to the DCM a written statement ("Statement") identifying those recommendations Seasons 52 will not implement, with an explanation why, within thirty (30) days. Immediately thereafter, the DCM will provide the Statement to EEOC. To the extent that EEOC disagrees with Defendant's failure to implement the recommendations,

the disagreement shall be resolved through the Dispute Resolution Process herein.  The EEOC must trigger the Dispute Resolution Process within thirty (30) days of EEOC's receipt of the Statement.

## RECRUITING AND HIRING

40.      Within thirty (30) days of the Effective Date, Seasons 52 will complete the following steps relating to its job advertisements and applications for hourly positions at all Seasons 52 restaurant locations:

    a.  Seasons 52 shall direct managers or third-party vendors to include the following language in all job advertisements: "Seasons 52 is an Equal Opportunity Employer."  The failure of an individual manager or third-party vendor to include such language shall not be deemed a violation of the Decree, provided that Seasons 52 takes prompt corrective action upon notice that a job advertisement is not compliant.

    b.  Each electronic application for FOH and BOH positions shall include the following language in its equal employment opportunity acknowledgement:

**SEASONS 52 IS AN EQUAL OPPORTUNITY EMPLOYER.  QUALIFIED APPLICANTS WILL RECEIVE CONSIDERATION WITHOUT REGARD TO AGE (THE AGE DISCRIMINATION IN EMPLOYMENT ACT PROHIBITS DISCRIMINATION ON THE BASIS OF AGE WITH RESPECT TO INDIVIDUALS WHO ARE AGE 40 AND OLDER), RACE, COLOR, RELIGION, SEX, GENDER IDENTITY, NATIONAL ORIGIN, SEXUAL ORIENTATION, FAMILY STATUS, OR DISABILITY.  WE ENCOURAGE ALL QUALIFIED APPLICANTS TO APPLY.  IF YOU BELIEVE YOU HAVE BEEN DISCRIMINATED AGAINST, PLEASE CALL OUR HOTLINE AT 1-888-400-4515.  YOU ALSO HAVE THE RIGHT TO FILE A CHARGE OF DISCRIMINATION WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.**

    c.  The language in Paragraph 41(b) shall be made part of the application itself and shall be placed in a prominent position on a web page visited by people in order to complete the electronic application.

41.    Within one hundred eighty (180) days of the Effective Date, Seasons 52 will complete the following steps designed to recognize the importance of an age-diverse workforce for all Seasons 52 restaurant locations:

    a.  Highlight successful PAG employees at least six times a year in Seasons 52's What's Fresh Weekly E-Newsletter or a comparable internal communication reaching all Seasons 52 employees;

    b.  To the extent not done already as contemplated by this decree, revise, amend, or supplement materials used to communicate policies, training, recruiting, and hiring, such as handbooks, manuals, brochures, or videos, to show an age diverse staff, including those in the PAG;

    c.  Post pictures of age diverse staff on social media sites used by Seasons 52;

    d.  Cease to use any posters, brochures, manuals, and/or banners to illustrate the Seasons 52 Dress and Appearance Standards that do not show age diverse staff, including those in the PAG;

    e.  Provide recognition to restaurants/Managing Partners who excel at hiring diverse employees, including those in the PAG;

    f.  Obtain feedback from Managing Partners who excel at hiring diverse employees, including those in the PAG, regarding recruiting and hiring practices;

42.     Within one hundred and eighty (180) days of the Effective Date, Seasons 52 will review, analyze, and update its interview and hiring process (including Interview Guides and worksheets) for all Seasons 52 restaurant locations in order to:

    a. Enhance the hiring process through consistent use of hiring tools by all hiring officials, including consistent use of the process laid out in the Interview Guides;

    b. Standardize the interview process to encourage the use of objective criteria at interviews;

    c. Standardize the provided interview questions in order to eliminate those likely to reveal an applicant's age;

    d. Standardize the provided interview questions to eliminate those that are not related to job qualifications including, but not limited to, those that are aimed toward an applicant's personal health, personal lifestyle, and/or personal habits; and

    e. Provide guidance to hiring managers regarding when and how to ask about an applicant's ability to perform the physical functions of the job (such as questions as to whether an applicant can lift trays, work required shifts, or serve multiple tables).

## APPLICANT TRACKING SYSTEM

43.     <u>Description of Applicant Tracking System</u>.  Seasons 52 currently maintains an electronic applicant tracking system, the "Talent Acquisition System," or "TAS."  Seasons 52 will maintain TAS, or an electronic applicant tracking system comparable to it, for the duration of this Decree and for all Seasons 52 restaurant locations.  TAS will record each applicant for

employment at a Seasons 52 restaurant for a BOH and/or FOH Position(s) and track his/her progress through the application process.

    a.  The following information shall be maintained for each individual recorded or tracked in TAS: (1) applicant name; (2) date of application; (3) position(s) for which applicant applied; (4) restaurant location(s) to which the application was submitted; and (5) whether or not the applicant received an employment offer.

    b.  During the duration of this Decree, Seasons 52 will offer all applicants the opportunity to voluntarily self-identify date of birth information or to opt-out of providing this information.

    c.  When presented the offer to self-identify date of birth, all applicants will be informed in writing as follows: "Seasons 52 is committed to equal employment opportunity, and employment decisions are made solely on the basis of qualifications. Your decision whether to disclose this information is completely voluntary and will have no effect on your consideration for any position for which you may apply and no one who makes interview or hiring decisions will have access to the information. This information is used for tracking purposes to help us prevent discrimination on the basis of age."

    d.  The EEOC agrees that the language relating to self-identification described in Paragraph 43(c) is not coercive, that it is being employed for a legitimate business purpose, that it is otherwise consistent with the ADEA, and that it is being done solely for purposes of resolution of the Litigation.

    e.  The individual age data of each applicant collected under this Decree will be provided to the DCM, ICM, and EEOC only.

44.     Information collected through the Applicant Tracking System will be reported to the DCM as provided in the Reporting section below.

## DOCUMENT RETENTION

45.     Within thirty (30) days of the Effective Date, Seasons 52 will issue directions to ensure that the following documents are maintained for the greater of the duration of this Decree plus one year or the time required under its document retention schedule for all Seasons 52 restaurant locations:

      a.  Any and all applications, resumes, cover letters, interview guides, interview notes, pre-screening results, assessments, and other documents relating to recruitment, interviewing, and hiring for FOH and BOH positions at Seasons 52;

      b.  Any and all data, reports, or recommendations by experts created or compiled in accordance with this Decree;

      c.  Exemplars of age-diversity related materials, such as handbooks, appearance standards, newsletters, social media postings, postings, and recruitment messages, created or used in accordance with this Decree;

      d.  All Hiring Complaints and all related investigation documents; and

      e.  All training materials and lists of attendees required by this Decree.

46.     The DCM may review Seasons 52's record retention practices to ensure compliance with the record retention obligations provided in Paragraph 45.   The DCM's authority includes, but is not limited to, the ability to ask for a copy of any records maintained under this section.   The DCM will report any non-compliance by one of the Covered Restaurant Locations to EEOC and Seasons 52 in writing within thirty (30) days of discovery.   Upon notice from the DCM of any failure to comply with the records retention obligations under this Decree,

Seasons 52 will have thirty (30) days to cure any non-compliance found.  The DCM shall report any non-compliance by one of the Covered Restaurant Locations to the EEOC.

## ANTI-DISCRIMINATION POLICY

47.     Seasons 52 will adhere to an anti-discrimination policy (the "Anti-Discrimination Policy") at all of its restaurant locations that comports with all requirements of the ADEA. Within thirty (30) days of the Effective Date, the Anti-Discrimination Policy will be provided to the EEOC, containing the following elements:

a.  a definition describing discrimination in a manner consistent with the requirements of the law including, but not limited to, a specific reference to non-discrimination in recruiting and hiring process;

b.  a clear, unambiguous prohibition of discrimination because of age, and a statement that such conduct violates the law and the Anti-Discrimination Policy;

c.  a statement that all employees, no matter their title, must abide by the Anti-Discrimination Policy;

d.  a provision that identifies the complaint mechanism available to employees to report allegations of discrimination;

e.  a statement that it is the duty of all supervisors and all management officials who receive a complaint of age discrimination to report the complaint to the designated individuals or departments;

f.  a statement that it is the duty of all supervisors and management officials to monitor the workplace for discrimination and that if they suspect that such conduct has taken place, it is their duty to report it to the designated individuals or departments;

g.  a statement that employees will not be subjected to retaliation for reporting suspected discrimination;

h.  a statement that reports of discrimination and investigations of those reports will be kept confidential unless disclosure is required for investigation or by law;

i.  a statement that all reports of age discrimination will be investigated and resolved promptly, and where complaints are found to have merit, appropriate disciplinary action will be taken against the offender, up to and including termination of employment.

j.  a statement warning that persons who engage in discrimination will be subject to disciplinary action, up to and including immediate discharge;

k.  a statement that employees have a right to report practices that they believe to be unlawful discrimination to government agencies, including to the Equal Employment Opportunity Commission; and

l.  a requirement that the complainant will be informed of the results of the investigation, i.e., whether the complaint was substantiated, unsubstantiated, or not conclusive, and in a manner consistent with other employees' rights to confidentiality.

48.     Within ninety (90) days of the EEOC's receipt of the Anti-Discrimination Policy described in Paragraph 47, Seasons 52 will distribute a copy of its Anti-Discrimination Policy to all current managers, place it in a prominent position on the intranet site used by Seasons 52 employees, and make copies available to employees at all Seasons 52 restaurants. Seasons 52 will provide a copy of the Anti-Discrimination Policy to all new managers and employees hired thereafter on such person's first day of work, and will review the Anti-Discrimination Policy

during orientation and/or new manager training (the "Manager in Training," or "MIT" program). When new handbooks are printed, the Anti-Discrimination Policy will be included. Seasons 52 will redistribute the Anti-Discrimination Policy electronically to all restaurant managers annually through its Recommitment process and make it available to all employees through the intranet site at all times.

## TRAINING

49.    Employee Training.  Newly hired Seasons 52 managers and hourly employees at all Seasons 52 restaurant locations shall be educated about Seasons 52's anti-discrimination policies and reporting procedures during new employee orientation. The training may be completed via video or live training during the term of this Decree.

50.    Manager Training.  Seasons 52 shall promote supervisor accountability by implementing the following manager training for managers involved in the hiring process for hourly employees (including Directors of Operations): Providing not less than two (2) hours of live training annually that covers: (i) the requirements of anti-discrimination laws, including the ADEA; (ii) the contents of this Decree to ensure compliance, specifically with reference to the applicant tracking system; (iii) Seasons 52's Anti-Discrimination Policy; (iv) Seasons 52's EEO and non-retaliation policies and complaint reporting procedures; (v) age-neutral and non-discriminatory recruiting, interviewing, and hiring; and (vi) training on how to avoid stereotypes, including ageism and age stereotypes, in hiring and in the workplace. This training shall be completed in person, within six months of the Effective Date, and on an annual basis thereafter during the term of this Decree.

51.    Manager-in-Training ("MIT"): During that portion of Seasons 52's MIT training that occurs in Orlando, Florida, Seasons 52 shall include not less than two (2) hours of live

training related to equal employment opportunity and non-discrimination, including: Anti-Discrimination Policy and complaint reporting procedures; (ii) the non-discrimination requirements of the law, including the ADEA; (iii) interviewing and hiring practices aimed to ensure compliance with the Anti-Discrimination Policy ; (iv) best practices to recruit and retain a diverse workforce, including with respect to age diversity; (v) training on how to avoid stereotypes in hiring and in the workplace, including ageism and age stereotypes; (vi) an explanation of the applicant tracking system; and (iv) Seasons 52's EEO and non-retaliation policies. MITs also will complete the Manager Training described in Paragraph 50.

52.   NRO Training:  In connection with each NRO during the duration of this Decree, Seasons 52 shall include not less than one (1) hour of live training to all managers involved in hiring at the NRO covering: (1) age-neutral and non-discriminatory recruiting, interviewing, and hiring; and (2) how to avoid stereotypes in hiring and in the workplace, including ageism and age stereotypes.

53.   Within thirty (30) days of each NRO training, Seasons 52 will provide an electronic list of the names, job titles, and work locations of all attendees, with date and location of attendance, to the DCM.  At the DCM's request, Seasons 52 will permit the DCM to review copies of any pamphlets, brochures, outlines, or other written materials to be provided to the participants of the training session, or to attend any training session.

## NOTICES AND COMMUNICATIONS

54.   Within thirty (30) days after the Effective Date, Seasons 52 shall direct the Managing Partners to post a laminated copy of the Notice attached as **Exhibit A** to this Decree at each Covered Restaurant Location in a conspicuous location easily accessible to and commonly frequented by hourly employees and thereafter shall ensure that such Notice is properly posted.

Seasons 52 shall certify to EEOC in writing within fifteen (15) business days after the posting deadline that the direction to post the Notice has been properly communicated and that the Notices have been posted.  Seasons 52 shall permit the DCM to enter the premises of any Covered Restaurant Location for purposes of verifying compliance with this Paragraph at any time during normal business hours without prior notice.

55.    On an annual basis during the duration of this Decree, the President of Seasons 52 will deliver an executive message to Managing Partners/Directors of Operations at all restaurant locations regarding the importance of equal employment opportunity and diversity, including age diversity in hiring.

56.    Prior to each NRO, the responsible Director of Operations will deliver a message to all hiring managers regarding the importance of equal employment opportunity and diversity, including age diversity in hiring, ideally in the Opening Team Meeting.

## JOB VACANCY NOTIFICATION

57.    EEOC and/or the Claims Administrator will ask each AAP potentially eligible to receive a monetary award if he or she is interested in reapplying for employment with Seasons 52 for a FOH and/or BOH Position(s).

58.    If the AAP indicates a present interest in employment with Seasons 52, then the Claims Administrator will advise the AAP's that he or she can apply online for any vacancies at the Seasons 52 location(s) to which the applicant expressed an interest, and that he or she will be considered along with any other applicants and will not be subjected to either age discrimination or retaliation for having participated in this lawsuit as a Claimant.

## MONETARY RELIEF

59.     Claims Settlement Fund.   Within forty-five (45) days of the Effective Date, Seasons 52 agrees to pay Two Million Eight Hundred Fifty Thousand dollars ($2,850,000.00) in full monetary settlement of this lawsuit.   Seasons 52 shall deposit the money into an interest-bearing Qualified Settlement Fund under §468(b) of the Internal Revenue Code, which will be administered by a third party claims administrator ("Claims Administrator") selected by EEOC. Defendant will notify the DCM in writing once the payment is complete, and the DCM will notify EEOC.

60.     The purpose of the Qualified Settlement Fund is to provide individual monetary awards to EAPs.   The Claims Administrator shall have authority to issue checks from the account to EAPs.

61.     EEOC shall have the sole authority to determine the EAPs and the amount to be paid to each EAP in accordance with the procedure outlined in the Claims Administration Section below.   Seasons 52 will not participate or have a role in determining eligibility for monetary awards or the amount of the awards, and waives any right to contest the same.

62.     Taxes.   Seasons 52 will be responsible for paying its share of all applicable payroll taxes on awards of back pay made to EAPs.   The Claims Administrator will provide Seasons 52 with all information required by Seasons 52 for tax purposes in a timely manner. The Claims Administrator shall be responsible for issuing appropriate tax forms to EAPs as applicable.   Payroll taxes shall not be deducted from any portion of an award paid as liquidated damages or interest.

63.     Claims Administration Expenses.   All costs and expenses relating to the claims administration process shall be paid by Seasons 52 separate and apart from the Claims

Settlement Fund.  The Claims Administrator shall bill Seasons 52 on an as-incurred and monthly basis.

64.     Failure to Make Timely Payment. If Seasons 52 fails to tender the payment described in paragraph 59 of this Decree, Seasons 52 will pay interest on the defaulted payment(s) at the rate calculated pursuant to 26 U.S.C. Section 6621(b) until the same is paid, and bear any additional costs incurred by Seasons 52's non-compliance or delay.

## CLAIMS ADMINISTRATION

65.     Within thirty (30) days of the Effective Date, Seasons 52 shall engage the Claims Administrator selected by EEOC, and the Claims Administrator will commence its duties in accordance with this Decree and instructions from the EEOC.

66.     The Claims Administrator may provide the following services pursuant to this Decree, consistent with instructions from EEOC and this Decree:

    a.   create and manage a Qualified Settlement Fund under §468(b) of the Internal Revenue Code;

    b.   identify, locate, and communicate with AAPs via telephone, e-mail, and/or other means of communication;

    c.   create a website dedicated to claims administration;

    d.   send and receive notices, questionnaires, and forms to AAPs;

    e.   create, track, and maintain data regarding AAPs;

    f.   answer questions from AAPs and/or EAPs about the claims administration process;

    g.   identify EAPs based on criteria provided by the EEOC and propose monetary distributions for each person;

    h.  transmit notifications to AAPs and EAPs;

    i.  transmit and review release forms;

    j.  issue payment to EAPs from the Claims Settlement Fund;

    k.  make periodic reports of activities to EEOC;

    l.  confer with EEOC regarding administrative matters;

    m.  issue and file related tax documents (including but not limited to tax returns required to be filed by the QSF and W-2/1099 forms for all payments from the QSF); and

    n.  perform such other administrative tasks as it and EEOC may deem necessary to facilitate the claims administration process.

**CLAIMS PROCESS**

67.    <u>Identification of AAPs</u>. Within one hundred and eighty days (180) days of the Effective Date, EEOC shall transmit to the Claims Administrator a list containing, if available, the full names, last known addresses, telephone numbers, and email addresses for all AAPs. EEOC has the sole discretion and exclusive right to identify AAPs, and this identification cannot be challenged by Seasons 52.

68.    EEOC will direct the Claims Administrator to, within a reasonable amount of time as determined by EEOC, distribute a notice from EEOC containing notice of the settlement, an explanation of the eligibility determination process, the website dedicated to the claims administration process, and a questionnaire ("Initial Package"), and a deadline for submission of all claims, to all known AAPs.  The Initial Package may clearly identify a deadline for submission of all claims.  EEOC will also determine what additional steps are to be taken to reach AAPs.

69.     <u>Review of Questionnaires</u>.   The Claims Administrator will review all Questionnaires to identify AAPs who are eligible to receive a monetary award based on criteria provided by EEOC.   The EEOC will, in its sole discretion, make the final eligibility determination. The criteria for eligibility shall include, but is not limited to, the following: (1) confirmation that the individual is in the protected age group; (2) confirmation that the individual applied to Seasons 52; (3) confirmation that the individual was interviewed by Seasons 52, and (4) confirmation that the individual was not hired by Seasons 52.  Seasons 52 shall not challenge any such determination.

70.     AAPs who seek to recover monetary compensation must complete the Questionnaire and postmark the mailing and/or send an e-mail response within an EEOC-established deadline.   The time may be extended by the EEOC for good cause shown. The Questionnaire must be timely in order to be considered.  Any person whose Questionnaire is not timely postmarked shall be barred from receiving any relief under this Decree or in connection with this action.

71.     All EAPs who receive monetary relief pursuant to this Decree shall be required, as a condition of receipt, to execute the release attached as Exhibit B.

72.     <u>Final Determination of Eligibility</u>. The Claims Administrator shall make recommendations to EEOC as to whether the AAPs who filed timely claims are eligible to receive a monetary award based on criteria provided to it by EEOC and, if so, the amount of each monetary award.  In making its recommendations, the Claims Administrator shall consider that evidence EEOC deems appropriate, including, but not limited to, evidence received by EEOC in its investigation of the charges of discrimination underlying this action, in connection with its litigation of this action, and in connection with the claims process provided by this Decree.

EEOC shall review the recommendations of the Claims Administrator and make all final eligibility determinations.

73.     Allocation of Monetary Relief. EEOC shall be the sole determiner of the amount of monetary relief to be received by any EAP under this Decree.  Seasons 52 will not participate in or object to EEOC's determinations.

74.     Notification of Awards. EEOC shall cause the Claims Administrator to notify each Claimant (both EAPs as well as those not receiving a monetary award) in writing of the amount of his or her monetary award, if any, and of the anticipated date on which EEOC plans to seek Approval of Allocation of Settlement Funds.  The Notification of Award may indicate that the award is subject to review or modification only by the Court.

75.     Release of Claims. Along with the Notification of Award, the Claims Administrator shall deliver to each EAP a Release (attached hereto as **Exhibit B**). Each EAP will be notified that in order to receive monetary payments under this Decree, he or she must execute and deliver to the Claims Administrator an appropriate Release, which will become effective upon the entry of the Order Approving the Allocation of Settlement Funds.  The letter will inform each EAP that such Release must be signed and returned to the Claims Administrator so that it is actually received by the Claims Administrator within sixty (60) days of the Notification of Award. Any EA whose executed Release is not actually received by the Claims Administrator within seventy-five (75) days of the Notification Award shall be ineligible for and forever barred from receiving any relief under this Decree.  The time may be extended by the EEOC for good cause shown including where the potential EAP did not receive the Questionnaire in a timely manner, but in no event, may the time be extended for more than one year.  The Claims Administrator shall provide all original signed releases to Seasons 52 and maintain copies for the

EEOC.  Prior to providing signed original releases to Seasons 52, and prior to sending any monetary awards, the Claims Administrator shall review all releases to ensure they are properly executed.  In the event that a Release has not been properly executed and proper execution appears possible as determined by EEOC, the Claims Administrator shall contact the EAP and attempt to procure a properly executed release.

76.    Motion for Approval of Allocation of Settlement Funds.  Upon the determination of all claims and the receipt of properly executed releases for all EAPs, EEOC shall file a motion with the District Court seeking approval of the allocation of the Settlement Fund among those EAPs who have executed and timely returned the Releases.  As an exhibit to this motion, EEOC shall file a proposed settlement distribution list containing the name and proposed gross settlement amount for each EAP. Seasons 52 shall not challenge the proposed settlement distribution list.  After appropriate review, in connection with which EEOC shall provide any information within EEOC's possession that the Court requests, the Court will enter an Order Approving the Allocation of the Settlement Funds and the distribution thereof pursuant to this Consent Decree.

77.    Distribution of Settlement Fund.  Within forty-five (45) days of the receipt of Notification from EEOC that the Order Approving the Allocation of the Settlement Funds by the Court has been entered, the Claims Administrator shall issue and mail any check(s) (allocated as provided in Paragraph 78 below) to each EAP deemed eligible for a monetary award in the gross amount reflected in the final settlement distribution list, less applicable deductions.

78.    Tax Treatment of Monetary Awards.  The monetary awards shall be allocated as determined by EEOC. The Claims Administrator shall issue appropriate tax forms with regard to the award.

79.    Distribution of Any Residual Amount in the Claims Settlement Fund.  In the event that checks are returned and/or the Settlement Fund is not completely distributed for any reason, EEOC may direct the Claims Administrator to allocate the remaining funds to a *cy pres* fund to be distributed to Iraq and Afghanistan Veterans of America, a charity located at 633 Third Avenue, 6th Floor, New York, NY 10017, and devoted to providing job assistance to veterans.  The Claims Administrator shall work with the Iraq and Afghanistan Veterans of America to ensure that the funds are used for employment services and job assistance.

80.    Relationship Between Eligibility for an Award and Present Hireability.  A determination of eligibility for an award pursuant to the terms of this Consent Decree is not a determination of present hireability.  An individual's eligibility for an award pursuant to the terms of this Consent Decree does not mean that the same individual is presently qualified for employment with Seasons 52 in a BOH and/or FOH Position.  Eligibility does not guarantee or secure a position with Seasons 52 for any individual now or in the future.

81.    Forwarding of Questionnaire Forms to EEOC. At EEOC's request, the Claims Administrator shall forward questionnaire forms, supporting documentation, and all other communications or information received from AAPs or EAPs.

82.    Confidentiality of Questionnaires.  The Claims Administrator shall treat questionnaires it receives as confidential, and will share those questionnaires only with EEOC.

83.    Late Claims.  For claims received after the filing deadline, the Claims Administrator shall, if so directed by EEOC, notify late-filing AAPs that their claims are untimely and that they are not eligible for any monetary award.  The Claims Administrator shall also, if so directed by EEOC, and inform late-filing AAPs that they may seek a review of the determination that they filed untimely by requesting EEOC to reconsider its determination.

EEOC may reverse the Claims Administrator's determination that a claim was not timely filed, in its sole discretion.

84.    Claims of Deceased Persons. Claims may be filed on behalf of deceased AAPs through representatives of their estate or next of kin if appropriate documentation (*e.g.*, letters testamentary or the equivalent) is provided.  EEOC will have final authority to determine the validity of claims filed on behalf of deceased AAPs.

## REPORTING REQUIREMENTS

85.    **Quarterly Reports**. Seasons 52 shall conduct a quarterly review of its applicant flow through its TAS system for FOH and BOH Positions at Covered Restaurant Locations, to include:

a.  Applicant Flow: number of applicants and number hired, broken down by: (i) the name of applicants; (2) positions applied for; (ii) age of applicants; (iii) restaurant locations; and (iv) any other pertinent information maintained in the Applicant Tracking System.

b.  Employment Figures: number of FOH and BOH employees, broken down by: (i) position; (ii) age; (iii) restaurant location; and (iv) date of hire.

86.    The findings of each quarterly review shall be summarized in a Quarterly Report and provided to the DCM on May 15, August 15, November 15, and February 15.  The Quarterly Review Report shall include an electronic copy of the TAS data relied on to create the report. In addition, within thirty (30) days after the last day of the term of this Decree, Seasons 52 shall submit the Quarterly Report and electronic copy of the applicant tracking system for the final quarterly period of this Decree.

87.     DCM Review.   Upon review of the Quarterly Review Report and TAS data, the DCM ~~may~~ shall conduct a study of Seasons 52's recruiting and hiring practices and data regarding hiring individuals in the protected age group and make recommendations to Seasons 52.  The DCM shall provide to the EEOC a copy of any findings and recommendations made to Seasons 52.  All recommendations of the DCM will be consistent with the purposes of this Decree.  If the DCM is not satisfied with Seasons 52's efforts to comply with the Decree, then upon request, the DCM shall further supply to the EEOC any data, documentary information, and all information provided by Seasons 52 EEOC deems necessary to evaluate any report by the DCM that reflects the DCM's dissatisfaction with Seasons 52's efforts to comply with the Decree.

88.     Within forty-five (45) days of Seasons 52's receipt of any recommendations by the DCM, Seasons 52 will in good faith implement or begin implementation of all recommendations other than those Seasons 52 identifies to the DCM as disruptive of its legitimate business operations.  If Seasons 52 believes that any of the DCM's recommendations cannot be implemented, then Seasons 52 shall provide to the DCM (also within forty-five days) a written statement ("Statement") identifying those recommendations Seasons 52 will not implement, with an explanation why.   Immediately thereafter, the DCM will provide the Statement to EEOC.  To the extent that EEOC disagrees with Defendant's failure to implement the recommendations, the EEOC must provide notice of any dispute.  In the event a dispute is raised, the Parties will confer in an effort to resolve the dispute.  If the Parties are unable to reach resolution after conferring, either party may initiate the Dispute Resolution Process described herein.

89.    **Semi-Annual Reports.**  On February 15, and August 15, annually, Seasons 52 shall provide the DCM with written reports that shall contain:

    a.  A certification from the Internal Compliance Monitor that the Recruiting and Hiring Steps described in the Decree have been completed.

    b.  A copy of any documents or other materials required to be created or updated under the terms of this Decree.

    c.  A certification from the Internal Compliance Monitor that the Notices required to be posted pursuant to the Decree were in fact posted;

    d.  A certification from the Internal Compliance Monitor that the Training required by the Decree occurred, and a list of all attendees from the entire six (6) month period preceding the Report, if required;

    e.  All Hiring Complaint Report(s) from the six (6) month period preceding the Report.  In the event there are no complaints of age discrimination, Seasons 52 shall send a "negative" report indicating no activity.

## DISPUTE RESOLUTION

90.    In the event that either party to this Decree believes that the other party has failed to comply with any provision of this Decree, the complaining party shall notify the other party of the alleged non-compliance within fifteen (15) business days of the discovery of the alleged non-compliance and shall afford the alleged non-complying party fifteen (15) business days to remedy the alleged non-compliance or to satisfy the complaining party that the alleged non-complying party has complied.

91.     If the alleged non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within fifteen (15) business days, the complaining party may apply to the court for appropriate relief.

### NOTIFICATION TO SUCCESSORS

92.     Seasons 52 shall provide prior written notice to any purchaser of its business, or a purchaser of all or a portion of Seasons 52 assets, and to any other successor, of the EEOC's lawsuit, allegations raised in the EEOC's complaint, and the existence and contents of this Decree.

### REPORTING REQUIREMENT (CONTACT)

93.     All reports, notices and other documents required hereunder to be delivered to EEOC shall be sent to Regional Attorney Robert E. Weisberg, Re: Seasons 52 Consent Decree, Equal Employment Opportunity Commission, Miami Tower, 100 S.E. 2nd Street, Suite 1500, Miami, Florida 33131 and robert.weisberg@eeoc.gov.

94.     All reports, notices and other documents required hereunder to be delivered to Seasons 52 shall be sent to Gerald L. Maatman, Jr., Re: Seasons 52 Consent Decree, Seyfarth Shaw LLP, 233 South Wacker Drive, Suite 8000, Chicago, Illinois 60606-6448 and gmaatman@seyfarth.com and Darden Restaurants, Attention: General Counsel, Re: Seasons 52 Consent Decree, 1000 Darden Center Drive, Orlando, Florida, 32837 and ethics@darden.com.

### COSTS

95.     Each party to this Decree shall bear its own costs associated with this litigation.

**SO ORDERED, ADJUDGED AND DECREED, this** 2 **day of** May, 2018

JUDGE JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

JUDGE JOAN A. LENARD
UNITED STATES DISTRICT JUDGE

AGREED TO:
FOR THE PLAINTIFF, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION:

Date: _____MAy 2, 2018_____

By: _____
Robert E. Weisberg, Esq.,

Regional Attorney for U.S. Equal Employment Opportunity Commission
Florida Bar No. 285676
Miami District Office
Miami Tower, 100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (305) 808-1789
Fax: (305) 808-1835
E-Mail: robert.weisberg@eeoc.gov

AGREED TO:

FOR THE DEFENDANT GMRI, INC.:

Date: _____5/1/18_____

By: _____
[Name, Title] Ricardo Cardenas
Appointed Representative
Senior Vice President, Chief Financial Officer

30



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington, D.C. 20507**

### NOTICE

1.      This NOTICE to all employees of Seasons 52 is being posted and provided as part of a mutually agreed upon Consent Decree between Seasons 52 and the U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC") in Civil Action No. 15-cv-20561 (S.D. Fla.), which alleged that Seasons 52 discriminated on the basis of age in hiring for its front of the house and back of the house positions.  Seasons 52 has denied all allegations of discrimination.  As part of the resolution of this matter, Seasons 52 agreed to post this Notice to reflect its commitment to hire employees regardless of their age.

2.      Seasons 52's policy and federal law require that there be no discrimination against any employee or applicant for employment who is age forty (40) or older, or because a person made a complaint of discrimination because of age with respect to hiring, compensation, promotion, discharge, or other terms, conditions, or privileges of employment.

3.      Seasons 52 will comply with such federal law in all aspects, and it will not take any action against employees because they have exercised their rights under the law by filing charges or cooperating with the U.S. Equal Employment Opportunity Commission or by otherwise opposing employment practices made unlawful under federal law.

4.      As part of this decree, Seasons 52 agreed to:

⊞ distribute its anti-discrimination policy;
⊞ train its managers on the policy and the requirements of the Consent Decree; adopt various monitoring and reporting measures to ensure compliance with the Consent Decree; and
⊞ take affirmative steps to increase its recruitment and hiring of employees age 40 and older for front of the house and back of the house positions at its restaurants.

5.      The EEOC is the federal agency responsible for enforcing the federal laws described above and receiving complaints regarding their violation. The EEOC maintains offices throughout the United States, and can be contacted at 1-800-669-4000 and www.eeoc.gov.

6.      This <u>NOTICE</u> will remain posted for 3 YEARS FROM DATE OF SIGNATURE.

SIGNED this ____ day of _____, 2018.

_____
President, Seasons 52

*__DO NOT REMOVE THIS NOTICE UNTIL 3 YEARS FROM DATE OF SIGNATURE__*

## RELEASE AND WAIVER

IN CONSIDERATION OF SETTLEMENT FUNDS RECEIVED, under that certain Consent Decree dated _____, in connection with the resolution of *EEOC v. GMRI, Inc.*, Case No. 15-cv-20561-JLK (S.D. Fla.) (the "Lawsuit"), I hereby provide the following release/waiver of claims against GMRI, Inc.:

> I hereby knowingly, voluntarily, irrevocably and unconditionally waive and release all claims, actions, damages of any sort, costs, expenses and attorneys' fees, and liabilities of any nature whatsoever for discriminatory failure to hire based on age arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), that were alleged in the Complaint filed by the EEOC or in the Lawsuit, from February 2010 through the effective date of the Consent Decree.

Date: _____

Name: _____
       [Claimant Name Printed]


Signature: _____